Addison Whitney, LLC v. Cashion, 2019 NCBC 16.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

ADDISON WHITNEY, LLC,

          Plaintiff,

v.

BRANNON CASHION, VINCENT
BUDD; RANDALL SCOTT,
ANDREW CUYKENDALL, AMY
BAYNARD, JENNIFER RODDEN,
and LEADERBOARD BRANDING,
LLC,

          Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 1956

**ORDER AND OPINION ON
DEFENDANTS' SECOND PARTIAL
MOTION TO DISMISS**

1.    This case arises from a dispute between Plaintiff Addison Whitney, LLC and six of its former high-level officers and employees. Addison Whitney recently amended its complaint for a third time, adding allegations and claims related to contracts governing the ownership of employee work product. Defendants move to dismiss these new claims pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. Having fully considered the parties' arguments, the Court **GRANTS** the motion.

> *Littler Mendelson, P.C., by Michael Scott McDonald, Stephen D. Dellinger, Steven A. Nigh, Allan H. Neighbors, IV, and Elise Hofer McKelvey, for Plaintiff Addison Whitney, LLC.*
>
> *Van Hoy, Reutlinger, Adams & Dunn, PLLC, by G. Bryan Adams, III, for Defendants Brannon Cashion, Vincent Budd, Randall Scott, Andrew Cuykendall, Amy Baynard, Jennifer Rodden, and Leaderboard Branding, LLC.*

Conrad, Judge.

I.
BACKGROUND

2. The Court has described the nature of this dispute and each party's allegations in earlier opinions. *See Addison Whitney, LLC v. Cashion*, 2017 NCBC LEXIS 23 (N.C. Super. Ct. Mar. 15, 2017); *Addison Whitney, LLC v. Cashion*, 2017 NCBC LEXIS 51 (N.C. Super. Ct. June 9, 2017); *Addison Whitney, LLC v. Cashion*, 2017 NCBC LEXIS 111 (N.C. Super. Ct. Dec. 1, 2017). Thus, the Court provides only a short summary here, focusing on the claims and allegations added in the third amended complaint.

3. Addison Whitney, a branding company, often works with pharmaceutical companies to create brand names for drugs and medical devices. (Third Am. Compl. ¶ 17, ECF No. 151.) The six individual Defendants are former officers and employees of Addison Whitney. (Third Am. Compl. ¶¶ 22–27.) They resigned on the same day in January 2017 for the purpose of starting a competing business, now known as Leaderboard Branding, LLC. (Third Am. Compl. ¶¶ 59, 75, 116.) Within days of receiving Defendants' resignations, Addison Whitney filed this suit, alleging breach of fiduciary duty, misappropriation of trade secrets, and several related causes of action.

4. Addison Whitney has since amended its complaint three times. The latest amendment, filed November 20, 2018, added new allegations and claims related to an Employee's Agreement as to Work Product ("EAWP") signed by three of the Defendants—Amy Baynard, Vincent Budd, and Andrew Cuykendall. The three

EAWPs, which are identical in substance, specify ownership rights as to certain types of work product created by employees while on the job. (Third Am. Compl. Exs. 1, 2, 3; *see also* Third Am. Compl. ¶¶ 47, 48.) In relevant part, Baynard, Budd, and Cuykendall each agreed that

> (1) all trademarks, designs, advertising copy and art work, commercial jingles and other advertising or promotion materials; and

> (2) all ideas, including new product ideas, of value to the business of the Employer or any of its affiliates, or clients of the Employer or of its affiliates;

> originated by me during my employment by Employer, either individually or jointly with others and whether within or outside office hours and relating in any way to the business of my Employer, are or shall become the exclusive property of my Employer.

(Third Am. Compl. Ex. 3; *see also* Third Am. Compl. Exs. 1, 2.)

5. At the time Baynard, Budd, and Cuykendall signed the EAWPs, they were employed by Addison Whitney, Inc. ("AW, Inc."). (*See* Third Am. Compl. ¶¶ 23, 25, 26.) In June 2007, inVentiv Health, Inc. acquired AW, Inc. through an asset purchase, dissolved the company, and created Addison Whitney as its successor. (Third Am. Compl. ¶ 22.) Baynard, Budd, and Cuykendall then became employees of Addison Whitney where they remained until January 2017. (Third Am. Compl. ¶¶ 23, 25, 26.) Addison Whitney alleges that it received and now owns AW, Inc.'s rights under the EAWPs. (Third Am. Compl. ¶¶ 47, 48.)

6. According to Addison Whitney, Defendants have built their new competing business with work product that belongs to Addison Whitney under the terms of the EAWPs. As alleged, the individual Defendants began planning to leave Addison Whitney and to start a competing business in 2015 or 2016. (Third Am. Compl.

¶¶ 57–59.) By mid-2016, while still employed by Addison Whitney, Baynard, Budd, and Cuykendall had also begun creating ideas and work product that they did not disclose to Addison Whitney and then later used to promote their new competing venture. (Third Am. Compl. ¶¶ 60, 61.) Addison Whitney seeks a declaratory judgment that it owns all of this work product, and it also asserts claims for conversion and breach of the EAWPs.

7. Defendants moved to dismiss these new claims on December 19, 2018. (ECF No. 153.) The motion has been fully briefed, and the Court held a hearing on February 6, 2019, at which all parties were represented by counsel. The motion is ripe for determination.

II.
ANALYSIS

8. In deciding a Rule 12(b)(6) motion, the Court must treat the well-pleaded allegations of the complaint as true and view the facts and permissible inferences "in the light most favorable to" the nonmoving party. *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986). Dismissal pursuant to Rule 12(b)(6) is appropriate when "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin v. British Am. Tobacco PLC*, 821 S.E.2d 729, 736–37 (N.C. 2018) (citation and quotation marks omitted).

9. Defendants contend that the EAWPs are either void or unenforceable on several grounds. It is unnecessary to address each asserted ground because one is

dispositive. In short, the EAWPs governed aspects of the employment relationships between AW, Inc. and Baynard, Budd, and Cuykendall—employment relationships that were terminated when AW, Inc. was acquired by asset purchase. The EAWPs are not enforceable as to the new and distinct employment relationships these Defendants began with Addison Whitney after the asset purchase. (Defs.' Br. in Supp. Second Partial Mot. Dismiss 11–12, ECF No. 154.)

10. Several recent cases have explored whether and to what extent restrictions in an employment agreement—such as a covenant not to compete or a promise not to disclose confidential information—survive when the employer is acquired by asset purchase. It is well established that the acquisition of a company by asset purchase (as opposed to a stock or equity purchase) serves to terminate its existing employment relationships. *See, e.g., Artistic Southern, Inc. v. Lund*, 2015 NCBC LEXIS 113, at *14 (N.C. Super. Ct. Dec. 9, 2015); *Amerigas Propane, L.P. v. Coffey*, 2015 NCBC LEXIS 98, at *12–13 (N.C. Super. Ct. Oct. 15, 2015). The buyer may decide to retain an employee, but if it does, a new employment relationship is created, and the buyer's ability to enforce restrictions in an agreement between that employee and the seller (*i.e.*, the original employer) is limited. Put simply, the buyer can enforce the original employer's "rights as they existed at the time of the asset sale" but cannot enforce a restriction "'as if it had been entered into originally by the buyer.'" *Artistic Southern*, 2015 NCBC LEXIS 113, at *15, *17 (quoting *Covenant Equip. Corp. v. Forklift Pro, Inc.*, 2008 NCBC LEXIS 12, at *24 (N.C. Super. Ct. May 1, 2008)).

11.     Here, Addison Whitney alleges that it acquired the right to enforce the EAWPs as a result of the asset purchase of AW, Inc.  As *Artistic Southern* and related cases show, though, what Addison Whitney acquired were AW, Inc.'s rights as they existed at the time of the asset sale in June 2007.  By their terms, the EAWPs granted AW, Inc. ownership rights to ideas and work product created by Baynard, Budd, and Cuykendall only "during" their employment "by" AW, Inc.  (Third Am. Compl. Exs. 1, 2, 3.)  In other words, Addison Whitney obtained the right to enforce the EAWPs as to work product created while Defendants were employed by AW, Inc., but it did not obtain the right to enforce the EAWPs as to their distinct, subsequent employment by Addison Whitney.  *See Covenant Equip.*, 2008 NCBC LEXIS 12, at *24 (holding that the buyer "does not step fully into the shoes of the original employer because the buyer is a new employer").

12.     As a result, even taking Addison Whitney's allegations as true, it has not stated any valid claims related to the EAWPs.  There is no allegation that Baynard, Budd, or Cuykendall violated the terms of the EAWPs during their employment by AW, Inc.  Nor is there any allegation that the disputed work product was created during the period when Defendants were employed by AW, Inc.—before June 2007.  Rather, all of the allegedly wrongful conduct by Baynard, Budd, and Cuykendall occurred during their employment with Addison Whitney, nearly a decade after the June 2007 asset purchase.  (Third Am. Compl. ¶¶ 58–60.)  The EAWPs are not, by their terms or by operation of law, enforceable as to that conduct.

13.    Accordingly, the Court grants Defendants' motion to dismiss.  The Court need not and does not address Defendants' alternative arguments.

III.
CONCLUSION

14.    For these reasons, the Court **GRANTS** Defendants' motion to dismiss the claims for breach of contract, conversion, and declaratory judgment to the extent the claims are based on allegations arising from the EAWPs.

    **SO ORDERED**, this the 6th day of March, 2019.


                            /s/ Adam M. Conrad
                            Adam M. Conrad
                            Special Superior Court Judge
                             for Complex Business Cases